CARMELO CANALE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 21, 1898.*

1. FOREIGN LAWS—*courts will take notice of construction of foreign laws by foreign tribunals.* Courts will take notice of the construction of the laws of a foreign country by its tribunals, and, to become informed of such construction, will receive the testimony of witnesses learned in the foreign law.

2. MARRIAGE—*presumptions cannot overcome positive proof of invalidity of marriage.* The presumption of the legality of a marriage, arising from the testimony of witnesses who were present at the ceremony, cannot overcome positive proof that the marriage was invalid under the laws of the country where ceremony took place.

3. BIGAMY—*when conviction for bigamy cannot be sustained.* Proof of a marriage ceremony in a foreign country between native residents thereof will not sustain a conviction for bigamy based on a subsequent marriage of one of the parties in this country, as against proof that both parties were under the marriageable age fixed by the law of the foreign country, and testimony of a witness learned in that law that such a marriage was absolutely void.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM G. EWING, Judge, presiding.

Carmelo Canale, the plaintiff in error, was convicted in the criminal court of Cook county on an indictment charging him with bigamy. Three witnesses testified that in 1891, in Altavilla, Italy, they were present at the marriage of plaintiff in error and Rosalie LoCascio; that the marriage took place in a church, and was solemnized by a minister of religion according to the rites of the church and in the presence of a large number of friends and acquaintances. The sister of Rosalie testified that after the ceremony plaintiff in error and Rosalie went to the home of his parents and they there lived together for three months, and that he then abandoned his wife, and that she never saw him again until she came to Chicago, where she found him living with another woman as his wife. She further testified that plaintiff in error was fifteen and her sister thirteen years old when they were married, and that no child had been born of the marriage. It was also shown by the People that in September, 1897, plaintiff in error was married to Giuseppa Rimagro by a justice of the peace in Chicago. Plaintiff in error testified in his own behalf, and denied ever participating in any marriage ceremony with the said Rosalie at any place or before any person authorized by law to perform a marriage ceremony, and denied that he had ever lived or cohabited with her as his wife. Count A. L. Rozwadowski, the Italian consul at Chicago, testified that he was a graduate of the university at Naples and was a member of the bar of the city of Turin, Italy, and had practiced before the courts in said city two years; that he was president of the Italian consular court at Alexandria, Egypt, for four years; that he was familiar with the civil code of Italy, and that the following citations given in evidence are correct translations from the code, a copy of which he then had before him:

Page 17, sec. 55: "No male person can enter into marriage until eighteen years of age nor any female person until fifteen."

Page 18, sec. 63: "No son under twenty-five nor daughter under twenty-one can marry without consent of father and mother."

Page 18, sec. 71: "Notice of proposed marriage must be posted by the official of public acts twice in succession on door of town hall in town where either party resides."

Page 18, sec. 74: "No publication of marriage can be posted unless consent of father and mother is had."

Page 20, sec. 84: "Where difference of opinion between father and mother, father's opinion shall prevail."

Page 25, sec. 93: "The marriage must be celebrated in the town hall in public manner, before the official of the civil acts of the town in which one of the contracting parties have their domicil or residence."

He testified further that these sections had been in force without amendment since 1865, and were still in force; that by the laws of Italy a marriage ceremony, to be valid, must be celebrated in accordance with the above provisions, and a compliance therewith is absolutely essential to constitute marriage; that there is no other legal mode in which a marriage can be celebrated, and an intended marriage contracted otherwise than as prescribed cannot be validated or recognized as lawful by subsequent ratification or declarations or the cohabitation of parties, and any marriage ceremony intended or pretended, and not celebrated in strict compliance with the foregoing provisions, is deemed in law wholly null and void and not merely voidable; that where an intended marriage is contracted or celebrated otherwise than in accordance with the foregoing provisions no act or acts of parties participating can make the same valid and of force in Italy.

The father of Giuseppa Rimagro testified that he knew the plaintiff in error and said Rosalie in Italy; that he

knew no such marriage ceremony as described by the witnesses ever took place, and that children born as the issue of people who have participated in such ceremony were not legitimate and had no right to inherit. What, if any, knowledge this witness had of the laws of Italy does not appear from the record.

Plaintiff in error, at the close of the evidence for the People, moved the court for an instruction to find him not guilty, which was refused, and he renewed his motion at the close of all the evidence, and it was again refused. A motion for a new trial was also overruled and judgment entered on the verdict.

DAVID JETZINGER, for plaintiff in error.

EDWARD C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and WILLARD M. McEWEN, of counsel,) for the People.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The vital question presented for our determination in this case is, was the alleged first marriage of plaintiff in error in Italy absolutely void? Counsel for the People contend that "the proof of a marriage in fact in another State, followed by cohabitation, is sufficient proof of the validity of the marriage, without evidence as to the law of the place where the marriage was celebrated,"—citing numerous authorities. It may be conceded that it is the general rule that if the celebration of the marriage is proved by witnesses who were present it is not necessary that any preliminary steps required by law should also be shown, as it will be presumed that the officiating person performed his duty and proceeded only when his authority was complete. (1 Bishop on Marriage and Divorce, sec. 450.) Still, when there is direct and positive proof as to the invalidity of the marriage this presumption cannot prevail. The only proof offered by the People in respect

to the alleged first marriage was, that it was solemnized
in a church by the officiating clergyman according to the
rites of such church, and it was shown that no other cere-
mony was performed.   In the absence of proof as to the
law of the kingdom of Italy relating to marriage such
proof would be sufficient to establish the marriage.   But
in this case we are confronted with a number of provi-
sions of the civil code of Italy requiring that the con-
tracting parties be of a certain age, or else the consent
of the parents; notice to be posted by a certain official,
which could not be done without the consent of the par-
ents duly obtained; and then a celebration in the town
hall in a public manner before a certain civil official,—
none of which provisions are shown to have been com-
plied with.   To this must be added the testimony of the
Italian consul, who qualified as one learned in the Italian
law, and testified, without objection, to the effect that a
compliance with all these provisions was absolutely es-
sential to a valid marriage in Italy, and that there was
no other legal mode in which a marriage could be cele-
brated or contracted to make it valid in that kingdom,
and that by no subsequent acts could it be ratified or
validated, it being wholly null and void.

It is urged by counsel for the People, that, notwith-
standing the failure to observe such provisions, the mar-
riage is still valid unless the law of the State where it
was celebrated expressly makes it invalid for lack of
such formalities, and it is claimed that the sections of
the Italian code quoted do not show that such require-
ments are exclusive or essential.   While this is in gen-
eral true as to *our* marriage laws, still courts uniformly
take notice of the construction given to foreign statutes
by the foreign tribunals, and, to be informed of such con-
struction, will receive the testimony of witnesses learned
in the foreign law.   (*Hoes* v. *VanAlstyne*, 20 Ill. 201.)   The
evidence of the Italian consul is uncontradicted as to the
construction and effect given to these statutes in Italy.

It is a general rule that a marriage invalid where it is celebrated is everywhere invalid. (1 Bishop on Marriage and Divorce, sec. 390.) The only exceptions to this rule relate to parties sojourning in a foreign country, who may, in certain cases, contract a valid marriage without celebrating it according to the local requirements. But the plaintiff in error and said Rosalie were both Italians, and, of course, do not come within such exceptions. In *McDeed* v. *McDeed,* 67 Ill. 545, it was said that the law of the State where the marriage takes place must control as to the validity of the marriage; and in *Weinberg* v. *State,* 25 Wis. 370, on an indictment for polygamy, where the first alleged marriage was in Prussia, and it appeared that by Prussian law a marriage, to be valid, must be entered into as a civil contract before a civil magistrate, it was held that proof of a religious ceremony will raise no presumption that a civil ceremony has been performed.

If this first marriage were treated as only voidable, and not void, both parties being at the time under the age prescribed by the laws of Italy, still, when they arrived at the age of consent, either of them would, at the common law, have had the lawful right to disaffirm it. Plaintiff in error did disaffirm it by ceasing to cohabit with the said Rosalie three months after the alleged marriage and by abandoning her, and by afterward marrying another woman, with whom, after he became of marriageable age, he has lived and cohabited as his wife. But the proof is uncontradicted that such marriages are absolutely void in Italy, and whatever may be the rule of law as to such marriages celebrated in this State, still, the foreign law and its construction being shown, we should follow that law, and especially so in favor of the innocence of the accused.

As the record shows there was no previous valid marriage the conviction cannot be sustained. The judgment is reversed and the cause remanded, with directions to discharge the accused.     *Reversed and remanded.*